Murray PRICE and Willie Bradwell, Plaintiffs-Appellants,

v.

The MARYLAND CASUALTY COMPANY and American General Insurance Company, Defendants-Appellees.

No. 75–2107.

United States Court of Appeals, Fifth Circuit.

Oct. 21, 1977.

Dixon L. Pyles, Jackson, Miss., for plaintiffs-appellants.

Thomas H. Watkins, Jackson, Miss., Bernard Marcus, New Orleans, La., for defendants-appellees.

Before MORGAN and RONEY, Circuit Judges, and KING,* District Judge.

MORGAN, Circuit Judge:

Plaintiff Murray Price[1] brought the present action asserting federal jurisdiction under 29 U.S.C. § 623 *et seq.*[2] and alleging that his employers, defendants Maryland Casualty Company and American General Insurance Company, forced him to take early retirement on the basis of impermissible age considerations. Fifty-six years of age at the time of this company action, Price was a member of the age group protected by the Age Discrimination in Employment Act [ADEA].[3] After a non-jury trial, the district court ruled that defendants had adequately rebutted any inference of discrimination on the basis of age against Price. Price appeals.

Price first argues that the district court incorrectly denied his motion for a class action. Price moved for certification of a class in June of 1971, three months after the complaint was filed, pursuant to Fed.R.Civ.P. 23. The proposed class would have included all employees of defendants between the ages of forty and sixty-five years who had been discharged or forced to take early retirement. A Rule 23 class action, commonly described as an "opt-out" procedure, binds all members of the class who do not affirmatively request exclusion from the action. Fed.R.Civ.P. 23(c)(2). The district court, therefore, effectively denied this motion through its order that an "opt-in" mechanism would be employed. That is, only those members who had filed a notice of intent to sue with the Secretary of

---

* District Judge of the Southern District of Florida, sitting by designation.

1. Willie Bradwell, joined as a plaintiff in this action, neither appeared at trial nor introduced any evidence in favor of his claim. Likewise, counsel for appellants submitted no arguments in their briefs attacking the correctness of the district court's judgment for defendants and against Bradwell. Accordingly, we affirm the district court judgment against Bradwell without further discussion.

2. Section 623 states in pertinent part:
   (a) It shall be unlawful for an employer—
   (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

3. 29 U.S.C. § 631 protects only those individuals between the ages of forty and sixty-five years against age discrimination.

Labor, pursuant to 29 U.S.C. § 626(d), and who had filed a written consent to becoming plaintiffs in the action would be included in the class. While the district court did not have the benefit of a Fifth Circuit decision on this issue in 1971, this court has subsequently issued an opinion upholding the correctness of the lower court's decision. Thus, in *La Chapelle v. Owens-Illinois, Inc.,* 513 F.2d 286 (5th Cir. 1975), this court held that a complaint brought under the ADEA could be maintained as a class action only for those members who "opt-in," pursuant to § 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b); [4] Rule 23 "opt-out" class actions, which cannot be reconciled with § 16(b) suits, are not permissible in age discrimination actions. 513 F.2d at 289. Accordingly, the district court's order requiring potential class members to "opt-into" the action was correct.

■ Price also argues that the district court improperly restricted his discovery of statistical information that could have revealed a company-wide practice of forcing employees within the protected age group to retire early. On May 22, 1972, Price moved, pursuant to Fed.R.Civ.Pro. 30(b)(6), to depose employees of defendant concerning company-wide discriminatory practices. Defendant promptly moved for a protective order against such discovery [5] and on June 1, 1972, the district court, *with the signed approval of Price's counsel,* issued a protective order stating that the officers and representatives of the defendant were not required to furnish information pertaining to former employees other than Murray Price, unless and until an order was entered by the court authorizing the plaintiff to prose-

cute the action as a class action. On July 18, 1972, Price deposed five officers of Maryland, asking numerous questions concerning Maryland's early retirement practices, but, relying on the protective order, the deponents did not answer these inquiries. Subsequently, on September 27, 1972, the district court denied Price's motion to designate his suit as a Rule 23 class action. Finally, the extended time for completing discovery in the action expired on December 15, 1973. At no time before the expiration of discovery did Price's counsel move to rescind the protective order or to compel responsive answers from any deponent who had refused to answer any questions. Yet, at the pre-trial conference held on July 31, 1974, with the trial scheduled to begin on September 16, 1974, Price's counsel requested discovery of Maryland's early retirement practices. Noting that plaintiff had been inexcusably dilatory in pursuing discovery and that his new requests, more extensive than other discovery requests, would further delay a case that had been pending for two years, the district court denied plaintiff's motion. This court does not find the district court to have abused its discretion in denying Price's motion to renew discovery, for the record demonstrates that Price was inexcusably dilatory in his efforts. While Fed.R.Civ.P. 37(d) does not specify a time limit in which procedures to compel discovery must be undertaken, courts interpreting that rule have recognized that unreasonable delay can result in a waiver of a party's right to avail himself of the rule. *See, Butler v. Pettigrew,* 409 F.2d 1205 (7th Cir. 1969) and *Commonwealth Edison Company v. Allis-Chalmers Manufacturing Co.,* 40 F.R.D. 96 (N.D.Ill.

---

4. Section 7(B) of the ADEA directs that:
    the provisions of this Chapter shall be enforced in accordance with the powers, remedies, and procedures provided in Sections 211(b), 216 . . . and 217 of this title, [which are provisions of the Fair Labor Standards Act].
  29 U.S.C. § 216(b) provides in part:
    Action to recover such liability may be maintained against any employer . . . by

any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

5. Defendant based its motion on Fed.R.Civ.P. 34: that the request for the production of docu-

1966).[6] Clearly, Price's gross delay in seeking this statistical data prevented him from demanding it on the eve of trial.

Price's final contention of error goes to the merits of the case, itself. That is, Price argues that the district court erred in its finding that defendant's motivations for forcing Price to take early retirement were not based on improper age considerations in violation of the ADEA. The district court found, in essence, that the Maryland Casualty Company had long been dissatisfied with the small volume of business generated by its Jackson, Mississippi office; its volume was well below that level that had been projected for it. Thus, finally in 1970 company officials met and decided that since annual premium volume was not increasing at a satisfactory rate, the expenses of the office would have to be reduced if it were to have any chance of becoming an economically feasible unit. The Jackson office employed three marketing representatives—Wayne Campbell, age forty-nine, Lee Mansell, age fifty, and Murray Price, age fifty-six. Company officials decided that one of these representatives would have to be terminated and his duties taken over by the remaining two representatives. To determine which representative was most expendable, these officials used the evaluation of supervisors and other officials who had observed and/or worked with these three men. Upon review of this data, company officials decided that Murray Price was the most expendable of the three. Lucien Lucas, a vice-president of Maryland in charge of the Jackson office, told Mr. Price of this decision and informed him that he would be eligible for early retirement. The district court found that Maryland's decision to terminate Price was in no way motivated by age considerations. The court based its finding on company records that showed that Price generated lower premi-

um volume than Campbell and Mansell and on the testimony of several company officials and supervisors, all of whom testified that Price showed little initiative, flexibility, or knowledge of more sophisticated underwriting techniques and that Mansell and Campbell performed more functions than did Price and, thus, were important to the operations of the Jackson office.

▬ In a § 16(b) action, the burden of proof lies with the plaintiff. Thus, while a prima facie showing of age discrimination will require the defendant to come forward with evidence demonstrating reasonable factors other than age for the discharge of the plaintiff, the burden of proof does not shift, but remains with the plaintiff. *A. A. LaRue v. General Telephone Company of Southwest,* 545 F.2d 546 (5th Cir. 1977) and *Bittar v. Air Canada,* 512 F.2d 582 (5th Cir. 1975). While there has been some uncertainty in this circuit as to whether the Title VII standard for making out a prima facie case, as articulated in *McDonnell Douglass Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies to age discrimination actions,[7] we have recently affirmed this standard. *Marshall v. Goodyear Tire and Rubber Co.,* 554 F.2d 730 (5th Cir. 1977). Thus, to show a prima facie case of age discrimination, the plaintiff-employee must show that (1) he was a member of the protected group, (2) he was discharged, (3) he was replaced with a person outside the protected group, and (4) he was qualified to do the job. According to this standard, it appears that Price did not satisfy the third element. That is, Maryland hired no one to replace Price, for the purpose of terminating him was to delete his position altogether. Even if one argued that Campbell and Mansell collectively replaced Price, in that they took over his duties, both were within the protected age group. Yet, even assum-

---

ments did not describe each item and category with reasonable particularity.

**6.** In *Butler,* the Seventh Circuit held that plaintiffs who had made no motion prior to trial to compel further answers to interrogatories had been so dilatory as to cause waiver of their right to these answers. In *Commonwealth Edi-*

*son,* the court held that a two month delay in moving under Rule 37 to compel further answers was excessive and resulted in waiver.

**7.** *See Wilson v. Sealtest Foods Division of Kraftco Corporation,* 501 F.2d 84 (5th Cir. 1974) and *Lindsey v. Southwestern Bell Telephone Company,* 546 F.2d 1123 (5th Cir. 1977).

ing that Price made out a prima facie case, the district court found that Maryland demonstrated reasonable factors other than age[8] for his termination.[9] These findings are not clearly erroneous. *See* Fed.R.Civ.P. 54.

AFFIRMED.

---

8. 29 U.S.C. § 623(f)(1) states:

It shall not be unlawful for an employer, employment agency, or labor organization—

(1) to take any action otherwise prohibited under subsections (a), (b), (c), or (e) of this section where . . . the differentiation is based on reasonable factors other than age (Emphasis added.)

9. *See Price v. Maryland Casualty Co.,* 391 F.Supp. 613, 623–25, (S.D.Miss.1975).