THE COUNTY OF LAKE, Plaintiff-Appellant, v. JAMES SEMMERLING, Lake Villa Township Road Commissioner, Defendant-Appellee.

Second District   No. 2—89—0487

Opinion filed March 12, 1990.

McLAREN, J., dissenting.

Fred L. Foreman, State's Attorney, and James C. Bakk, of Lonchar, Nordigian & Bakk, both of Waukegan (Van J. Herrero, Assistant State's Attorney, of counsel), for appellant.

Hill, Van Santen, Steadman & Simpson, P.C., of Chicago (Scott W. Petersen, of counsel), for appellee.

Jacqueline M. Gerber, of Brown, Hay & Stephens, of Springfield, for *amicus curiae* Township Officials of Illinois.

Richard H. Hoffman, Victor J. Piekarski, and Michael Resis, all of Querrey & Harrow, Ltd., of Waukegan, for *amicus curiae* Urban Counties Council of Illinois.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, the County of Lake, filed suit in the circuit court of Lake County seeking, *inter alia*, a permanent mandatory injunction requiring defendant, James Semmerling, the Lake Villa Township road commissioner, to apply for and obtain a site-development permit pursuant to a Lake County ordinance for certain work to be done by defendant on various township roads located in unincorporated Lake County. Both parties moved for summary judgment, and the trial court denied plaintiff's motion and granted defendant's motion.

The sole issue on appeal is whether plaintiff can enforce its zoning ordinance, requiring, in pertinent part, a site-development permit for excavations exceeding three feet, for earth moving in excess of 1,000 square feet and for removal of plant cover exceeding 1,000 square feet, against the Lake Villa Township road commissioner performing work implicating those provisions on certain township roads in unincorporated Lake County.

Defendant is the Lake Villa Township road commissioner. The three situations which provide the basis for this litigation involve

earth-moving operations by the township along the Glade Avenue right-of-way, construction of a berm at the southwest intersection of Chesney Drive and Park Court, and grading and drainage work on Alice Lane, all in unincorporated Lake County. All three projects involved excavation of land covered by the ordinance, and all three locations are township roadways within Lake Villa Township. There is no dispute that all three projects are encompassed by the Lake County zoning ordinance as to subject matter.

The Lake County zoning ordinance at issue requires, *inter alia*, that whenever "land is cleared, graded, transported, or otherwise disturbed by the movement of earth" and such activity involves excavation in excess of three vertical feet, excavation, fill, or combination exceeding 1,000 square feet, or removal of plant cover from an area exceeding 1,000 square feet, that a site-development permit be obtained from Lake County. (Lake County, Ill., Zoning Ordinance art. 4, §§IX D1(a)(3), (a)(4), (a)(5) (1987).) The ordinance contains no specific exemptions for township projects that fall within the purview of its requirements.

Defendant was "red tagged" for being in violation of the ordinance as to each of the three projects. Plaintiff subsequently filed a separate action as to each of the projects seeking a mandatory injunction to require defendant to apply for and obtain a site-development permit for each project. These three cases were consolidated in the trial court. Defendant filed an amended answer in which he raised as affirmative defenses that the section of the ordinance sought to be enforced does not apply because of his exclusive authority over Lake Villa township roads and that enforcement of the ordinance was arbitrary and aimed at thwarting or frustrating his statutory duties.

Defendant filed a motion for summary judgment on December 11, 1987, to which was attached the affidavits of defendant and Patrick Anderson. Anderson's affidavit was subsequently stricken, and defendant's affidavit stated, *inter alia*, that the ordinance at issue had not been previously applied to any work performed by the Lake Villa Township road district. On December 5, 1988, plaintiff filed its motion for summary judgment, and on December 22, 1988, defendant filed a second summary judgment motion, identical to the first except no affidavits were attached thereto. On January 5, 1989, defendant filed a brief in support of its motion for summary judgment to which it attached various newspaper articles, documents, affidavits of various township highway commissioners, and depositions. Plaintiff also filed a brief and attached an affidavit and an excerpt from a deposition. The trial court denied plaintiff's motion and granted defendant's,

finding that the Lake Villa Township road district is a separately created entity and is not subservient to Lake County zoning laws requiring permits.

■ Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c); *Puttman v. May Excavating Co.* (1987), 118 Ill. 2d 107, 112, 514 N.E.2d 188.) Summary judgment is a drastic measure which should be allowed only when a moving party's right to it is clear and free from doubt. *Pyne v. Witmer* (1989), 129 Ill. 2d 351, 358, 543 N.E.2d 1304.

Plaintiff principally contends that its authority to enact an ordinance regulating and restricting land use is derived from section 1 of "An Act in relation to county zoning" (Ill. Rev. Stat. 1987, ch. 34, par. 3151) (Counties Act) and that there is no exemption in that statute preventing such regulation as it pertains to township roads. In addition, plaintiff points out that the Illinois Highway Code, as it provides for a township's authority to build and maintain highways (Ill. Rev. Stat. 1987, ch. 121, par. 6—201 *et seq.*), contains no provision exempting the township road commissioners from the requirements imposed by county zoning regulations. Finally, it relies on *Wilmette Park District v. Village of Wilmette* (1986), 112 Ill. 2d 6, 490 N.E.2d 1282, to support enforcement of its ordinance against defendant.

Defendant essentially argues that the zoning ordinance cannot be applied to him because to do so would interfere with his statutory duty to maintain township roads. He further maintains that the ordinance excludes township uses and that enforcement of the ordinance against him constitutes selective enforcement. The township officials of Illinois filed an *amicus curiae* brief in which they basically contend that application of the zoning ordinance would unnecessarily disrupt defendant's performance of his statutory duties.

■ Defendant initially raises the point that plaintiff cannot rely on section 1 of the Counties Act as support for authority to enact its ordinance because it did not rely on such authority in the trial court and, therefore, reliance on section 1 in that regard has been waived. Defendant's contention is misplaced. Plaintiff's failure to specifically refer to section 1 as authority for its enactment of the zoning ordinance at issue does not constitute a waiver of its reliance on section 1, where section 1 is a matter of statutory law which this court is obligated to consider whether raised below or not. Moreover, defendant conceded at oral argument that it does not challenge the authority of plaintiff to enact the zoning ordinance; consequently, we fail to recognize the significance of defendant's waiver argument to this issue.

While neither party cites nor do we find any Illinois cases precisely addressing the principal issue presented here, we are persuaded by our supreme court's decision in *Wilmette Park District v. Village of Wilmette* (1986), 112 Ill. 2d 6, 490 N.E.2d 1282. In that case, the supreme court addressed the issue of whether a park district, in exercising its statutory authority over the operation of its parks, is exempt from zoning ordinances of its host municipality. (*Wilmette Park District*, 112 Ill. 2d at 9-10, 490 N.E.2d at 1283.) In holding that the park district must submit to the process for acquiring a special-use permit from the host municipality to construct lights on one of its athletic fields, the court concluded that requiring the park district to submit to the permit process struck the best balance between the interests of the park district in operating parks in the municipality and the municipality's interests in regulating the use of land within its borders. (112 Ill. 2d at 17-18, 490 N.E.2d at 1286-87.) In so holding, the court distinguished a previous line of cases which held that local governmental units are exempt from zoning ordinances of their host municipalities where application of those ordinances would frustrate the statutory duties of those local governmental units. 112 Ill. 2d at 15, 490 N.E.2d at 1286.

In the *Wilmette Park District* case, submission by the park district to the municipality's zoning ordinance would not have prohibited the park district's use of the land in question. (112 Ill. 2d at 15, 490 N.E.2d at 1286.) It is important to note the court's emphasis that the municipality's interest was not based upon any desire to manage park land, but rather was premised upon its interest in land-use planning and regulation. (112 Ill. 2d at 18, 490 N.E.2d at 1287.) Finally, the court noted that intergovernmental cooperation is symmetrical and should a municipality act unreasonably, arbitrarily or discriminatorily in denying a park district a special-use permit or otherwise abuse its zoning power to thwart or frustrate the park district's statutory duties, such action will be subject to further review. 112 Ill. 2d at 19, 490 N.E.2d at 1287.

While we recognize the factual distinctions between the *Wilmette Park District* case and this case, we believe the principles enunciated in *Wilmette Park District* are applicable here. Applying those principles to the present case, we conclude that plaintiff could enforce its zoning ordinance requiring defendant to apply for and obtain site-development permits for the three projects at issue in this case. We recognize that defendant has certain duties regarding the maintenance and improvement of township roads within his jurisdiction (see Ill. Rev. Stat. 1987, ch. 121, par. 6—201 *et seq.*), but plaintiff

also has obligations to the health, safety and welfare of its inhabitants, including the prevention of soil erosion, flooding and related problems. While we need not prioritize defendant's or plaintiff's statutory duties, it is necessary to establish the appropriate balance between their respective obligations under the particular facts of this case. (See *Wilmette Park District*, 112 Ill. 2d at 17, 490 N.E.2d at 1286-87.) In doing so, we recognize that the means for achieving cooperation between competing interests or overlapping responsibilities cannot be reduced to a rigid mathematical formula. *Wilmette Park District*, 112 Ill. 2d at 17, 490 N.E.2d at 1286-87.

Requiring defendant to submit to the site-development permit process strikes the appropriate balance between the competing interests present here. There is no indication here that having defendant apply for and obtain a site-development permit would unnecessarily or significantly interfere with defendant's statutory obligations. Furthermore, the ordinance, by its terms, would not apply in every situation where defendant sought to perform work on the township roads. Rather, its applicability is limited to road construction projects which involve certain minimum amounts of excavation or earth moving. On the other hand, application of the ordinance to township road projects would serve the purpose of minimizing or eliminating potentially damaging soil erosion or flooding which might occur absent the zoning regulations. Requiring defendant to submit to the site-development permit process would not prohibit him from performing his statutory obligations to maintain township roads, but would merely place an affirmative duty on him to comply with the zoning ordinance as it applies to certain limited functions of defendant. See *Wilmette Park District*, 112 Ill. 2d at 15, 490 N.E.2d at 1286.

Although defendant and the dissent place heavy reliance on *Village of Oak Brook v. County of Du Page* (1988), 173 Ill. App. 3d 490, 527 N.E.2d 1066, we are unpersuaded. There, the County of Du Page, after obtaining State and Federal approval, sought to improve two county highways located within a flood-plain area in the corporate limits of Oak Brook. (*Village of Oak Brook*, 173 Ill. App. 3d at 491, 527 N.E.2d at 1067.) Oak Brook sought an injunction prohibiting Du Page County from performing the construction without first obtaining a variance from one of its ordinances concerning road construction in flood plains. (173 Ill. App. 3d at 491-96, 527 N.E.2d at 1067-70.) This court held that Du Page County was not required to submit to the municipal ordinance where it had already sought and received approval for the project from both the State and Federal governments. (173 Ill. App. 3d at 494-96, 527 N.E.2d at 1069-70.) To do so would

result in chaos and undermine the coordinated structure between the various governmental bodies having jurisdiction over the areas involved and those having responsibility for maintenance of the roadways. 173 Ill. App. 3d at 494-96, 527 N.E.2d at 1069-70.

In the case before us, unlike in *Village of Oak Brook*, no chaos will result from application of the plaintiff's ordinance to the defendant under these circumstances. Nor will its application potentially conflict with any other governmental entity that might exercise jurisdiction over the particular subject matter involved. Moreover, we do not believe that *Village of Oak Brook* is directly applicable here, because in that case the county had already submitted to extensive regulation by the State and Federal governments. The question in that case was not whether the county must submit to regulations of another governmental entity prior to performing work on roads over which it had a statutory duty to maintain, but, rather, whether a municipality could require the county to submit to its regulations after the county had already received approval from the State and Federal governments under regulations which effectively served the same purpose as the regulations sought to be enforced by Oak Brook.

Finally, we note that the dissent characterizes the question as one of "exclusive authority or nonexclusive authority which results in preemption." (195 Ill. App. 3d at 101.) The discussion of the exclusive authority of the park district in the *Wilmette Park District* decision was in a completely different context than that relied upon by the dissenting judge to support his analysis.

■ In *Wilmette Park District*, the park district took the position that "because the General Assembly has granted park districts authority to operate parks, it impliedly follows that the legislature intended to confer zoning immunity to park districts in instances where zoning may affect park operations." (*Wilmette Park District*, 112 Ill. 2d at 14, 490 N.E.2d at 1285.) The supreme court rejected that broad contention and stated that the General Assembly has not granted park districts the exclusive jurisdiction to operate parks as all municipalities are authorized to establish and operate parks. (*Wilmette Park District*, 112 Ill. 2d at 14, 490 N.E.2d at 1285.) "Absent an explicit statutory grant of immunity, the mere fact that the park district, a local unit of government, has a statutory duty to operate its parks cannot be extended to support the inference that it can exercise its authority without regard to the zoning ordinances of its host municipality." *Wilmette Park District*, 112 Ill. 2d at 14-15, 490 N.E.2d at 1285.

As in the *Wilmette Park District* case, the General Assembly has

not granted the township road commissioner an explicit statutory grant of immunity from the zoning ordinances of its host unit of local government even though it has been granted sole responsibility to maintain and operate township roads.

Defendant also contends that the ordinance by its own terms does not apply to township highway commissioners. In so arguing, he refers to a portion of the ordinance which lists "township structures and uses" as being permitted in all of the various zones. (Lake County, Ill., Zoning Ordinance art. 3, §II (1987).) We are unpersuaded by this argument, however, as that part of the ordinance referred to by defendant merely lists various uses that may be maintained within certain zones but does not address the issue before us, which is whether a township use must conform to certain permit requirements.

Consequently, the trial court erred in granting summary judgment on behalf of defendant on the basis that defendant is not subservient to plaintiff's zoning laws requiring site-development permits. Of course, should plaintiff apply the zoning ordinance in an unreasonable, arbitrary or discriminatory manner in denying defendant a permit or otherwise abuse its zoning power to thwart or frustrate defendant's statutory duties, a question not presented as defendant did not apply for a permit, its actions will be subject to further judicial review. See *Wilmette Park District*, 112 Ill. 2d at 19, 490 N.E.2d at 1287.

■ Defendant does raise a different, alternative basis, which he presented below, for affirming the trial court's grant of summary judgment in his favor. Specifically, he argues, relying on *People v. Husler* (1975), 34 Ill. App. 3d 977, 342 N.E.2d 401, that the zoning ordinance in issue has never been applied to any other township road commissioners in Lake County seeking to perform road construction on any township roads and, therefore, plaintiff's application of the ordinance to him constitutes selective enforcement. He bases this contention on various affidavits and other documents which were attached to his brief in support of his motion for summary judgment. Plaintiff filed a responding brief attaching an affidavit and excerpt from a deposition in which it is stated that site-development permits have been applied for and issued to contractors doing work on township roads and that at least two other township road commissioners were previously "red tagged" for work done on township roads without a permit.

It is evident that there is a genuine issue of material fact created by the conflicting affidavits and depositions which precludes summary judgment to either party in light of the alternative defense offered by defendant. Therefore, while we reverse summary judgment in favor of

defendant for the reasons stated above, we remand for further proceedings on the complaint and the affirmative defense of selective enforcement. We do note, however, that selective enforcement is generally not a defense to zoning violations. *People v. Husler* (1975), 34 Ill. App. 3d 977, 980, 342 N.E.2d 401; see also 82 Am. Jur. 2d *Zoning & Planning* §253, at 788 (1976).

The judgment of the circuit court granting summary judgment for defendant is reversed, the denial of summary judgment in favor of plaintiff is affirmed, and the cause is remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded with directions.

WOODWARD, J., concurs.

JUSTICE McLAREN, dissenting:

I respectfully dissent.

The question in this case is not exemption or nonexemption of township highway commissioners in the Counties Act, as opined by the majority. The question is exclusive authority or nonexclusive authority which results in preemption. See *Village of Oak Brook v. County of Du Page* (1988), 173 Ill. App. 3d 490, 494, 527 N.E.2d 1066.

I agree with the majority that there is no specific exemption for township highway commissioners set forth in "An Act in relation to county zoning" (Ill. Rev. Stat. 1987, ch. 34, par. 3151) and that there is no exemption in that statute preventing such regulation as it pertains to township roads. However, neither is an exemption set forth for county, State, or Federal authorities. Applying the rationale of the *Wilmette* case as interpreted by the majority, the county may "red tag" any roadway authority in unincorporated McHenry County. However, I do not believe such an exemption need exist in order for the trial court to be affirmed. The majority cites *Wilmette Park District v. Village of Wilmette* (1986), 112 Ill. 2d 6, 490 N.E.2d 1282, to support enforcement of the zoning ordinance. I believe the *Wilmette* case is distinguishable and actually, if carefully examined, supports affirmance.

I believe that the *Wilmette* case is factually distinguishable for several reasons. First, the park district in *Wilmette* was seeking to exercise a *non*exclusive authority. (*Wilmette*, 112 Ill. 2d at 14.) Unlike the park district in *Wilmette*, the township highway commissioner here has exclusive authority over township highways. Thus, the rationale of the majority in citing *Wilmette* is misplaced. Second, the in-

stallation of the lights in compliance with the zoning ordinance in *Wilmette* was, in essence, a "one-time shot," which did not necessarily hamstring the park district in carrying out its statutory authority (*Wilmette*, 112 Ill. 2d at 14), unlike the continuous application, inspection, etc., on virtually each highway project which would be required under the county's zoning ordinance. Third, the placement of lights in the ball diamond and other matters in *Wilmette* are much different than the configuration, construction, and repair of township roads which are covered by the Illinois Highway Code.

I consider the case of *Village of Oak Brook v. County of Du Page* (1988), 173 Ill. App. 3d 490, controlling. In *Oak Brook*, a municipality sought to enjoin the construction of a county highway. This court affirmed the trial court's finding that the county was not required to submit to the municipal ordinance, based upon "preemption." *Oak Brook*, 173 Ill. App. 3d at 494.

Section 1—102 of the Illinois Highway Code (the Code), entitled "[l]egislative intent," states in part, "It is further declared that highway transportation system development requires the cooperation of State, county, township, and municipal highway agencies and coordination of their activities on a continuous and partnership basis and the legislature intends such cooperative relationships to accomplish this purpose." (Ill. Rev. Stat. 1987, ch. 121, par. 1—102.) The stated legislative intent does not include cooperation amongst departments of those various units of government other than those relating specifically to highways.

Division 1 of article 5 of the Code, entitled "General Powers of County—Designation of County Highways," sets forth the powers and duties of the county board. (Ill. Rev. Stat. 1987, ch. 121, pars. 5—101 through 5—101.11, inclusive.) Nowhere in those powers and duties of the county board is there any indication that the county may regulate through zoning ordinances township roads and bridges or State and Federal streets, roads and highways.

Article VI of the Code, entitled "Administration of Township and District Roads," contains the Code provisions relating to township highways. (Ill. Rev. Stat. 1987, ch. 121, par. 6—101 *et seq.*) Section 6—101, entitled "Road district roads," states in part: "Roads which are part of the township and district road system are under the jurisdiction of the several road districts in which they are located, subject to such supervision by the county and the [Illinois Department of Transportation] as is provided in this Code." (Ill. Rev. Stat. 1987, ch. 121, par. 6—101.) Section 6—325, entitled "Dedicated public roads or streets—When inclusion in township or district road system—Proce-

dure," relates to the inclusion of roads or streets and platted subdivisions into the township or district road system. It is the only instance in the Illinois Highway Code that provides when and if roads or streets must conform to the rules, specifications and regulations regarding location, width, grades, surface and drainage structures established by the county board. "In counties having more than 500,000 inhabitants, *** if such roads or streets conform to the rules, specifications and regulations regarding location, width, grades, surface and drainage structures established by the highway commissioner, the county superintendent of highways and the county highway plan commission, if any," the roads may be incorporated into the township or district road system. Ill. Rev. Stat. 1987, ch. 121, par. 6—325.

Furthermore, in counties less than 500,000 it is the highway commissioner, not the building and zoning administrator, that determines whether the roads conform. (Ill. Rev. Stat. 1987, ch. 121, par. 6—325.) In counties greater than 500,000, the Code does not include any duties, responsibilities or authority on the part of the building and zoning commissioner to regulate township roads.

The ability of the county to impose its rules and regulations regarding surface and drainage, width and grades, etc., is only set forth in the one instance in section 6—325, which only applies when roads already in existence are brought *into* the township road system. The legislature has evidenced preemption by excluding such regulation in all the other sections. Nowhere in the Code does the county have the authority to regulate township roads except pursuant to section 6—325, and said regulation is not enforced by the county zoning officer.

I believe the Code provides the appropriate statutory structure setting forth the parameters of the duties and responsibilities of the State, county, township, and municipal highway authorities. Therefore, the trial court was correct in determining that because the township highway commissioner had sole authority over township roads, he was not obliged to seek approval from some other individual outside the authority of the Highway Code.

The rationale of the *Oak Brook* case, not requiring the county to comply with municipal ordinances, has equal application to township highways. If the county highway system, for which the county has exclusive authority to configure, construct and repair, shall *not* be affected by municipal ordinances, then neither shall township highway commissioners, who have the exclusive authority over township roads, be affected by county ordinances except under section 6—325.

Moreover, the majority's interpretation here effectively overrules the *Oak Brook* case. It does so by addressing and disposing of the

cause based upon nonexemption rather than nonexclusive authority, *i.e.*, preemption.

Although I believe that the legislature has preempted the activity of the county zoning officer, if the legislature deems it appropriate to address the majority's opinion, I would suggest a preemptive clause in the Code rather than numerous exemption clauses in sundry statutes. I find it intriguing that the Code was enacted 30 years ago and this is apparently the first instance of "red tagging" by a county zoning officer of a township highway, according to the record below.

If the majority is correct, it is not only a declaration but a revelation.

For the reasons stated herein, I would affirm the judgment of the trial court and would not remand the matter for further proceedings.