JERRY MARCH, Plaintiff-Appellant, v. MILLER-JESSER, INC., *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—88—3432

Opinion filed August 10, 1990.

150

Leon Zelechowski, of Chicago, for appellant.

Neal, Gerber, Eisenberg & Lurie, and Phelan, Pope & John, Ltd., both of Chicago (Robert Radasevich, Richard A. Devine, and Jan Feldman, of counsel), for appellees.

PRESIDING JUSTICE LaPORTA delivered the opinion of the court:

Plaintiff, Jerry March, instituted this shareholders' derivative action in chancery against Miller-Jesser, Inc. (Miller-Jesser), a corporation that had been engaged in the business of executing and clearing trades for its customers on the Chicago Mercantile Exchange, and against Marshall Katz (Katz), Fred Scher (Scher), and William Henner (Henner). Plaintiff alleged that the individual defendants had breached their fiduciary duties as directors of the corporation, had fraudulently and unlawfully conspired to exploit Miller-Jesser, and had conspired to convert the assets of Miller-Jesser for their own use and benefit. In his third amended complaint, plaintiff asserted share-

holders' derivative claims against Katz and Scher in count I and against Henner in count III. Plaintiff asserted individual claims of breach of fiduciary duties against Katz and Scher in count II and against Henner in count IV. Plaintiff sought an accounting, compensatory damages, and punitive damages.

The trial court granted summary judgment in favor of defendants on counts I and III and dismissed counts II and IV of the third amended complaint. The trial court also dismissed plaintiff's claims for punitive damages. Plaintiff has appealed the rulings of the trial court.

Defendants have filed a motion to strike certain portions of the notice of appeal, and the plaintiff filed a response. The motion has been taken with the case.

The record reveals that in November 1987, plaintiff, Katz, Scher, Henner, Paul Glenn, and Ernest Katz, the father of Marshall Katz, formed, and held all of the shares in, Harvest Commodities, Inc. (Harvest Commodities), a holding company. When Harvest Commodities was incorporated, plaintiff, Katz, Scher, and Henner each made a capital contribution of $10,000. In 1979, Harvest Commodities purchased all of the capital stock of Miller-Jesser, and Paul Glenn's shares were subsequently repurchased by Harvest Commodities. Thereafter, plaintiff, Katz, Scher, and Henner owned 22¼% of the stock in Harvest Commodities, and indirectly, the same percentage in Miller-Jesser. Ernest Katz owned 11% of the shares in these corporations.

Commencing in 1979, Miller-Jesser shared office space, utilities, telephones, and other equipment with Katz, Scher & Company (KSC), a securities trading firm owned by Katz and Scher. The expenses of these two corporations for rent, utilities, telephone services, office and communications equipment, and leasehold improvements were allocated to each corporation, and Miller-Jesser reimbursed KSC for its share of the expenses.

From 1979 to 1983, Katz, Scher, and plaintiff were members of the board of directors of Miller-Jesser. During that time period, Katz was president of Miller-Jesser, and plaintiff was executive vice-president, but Katz and Scher operated and managed the daily affairs of the corporation. Although he was a director and an officer of the corporation, plaintiff had no duties in either capacity and did not take an active role in the corporation's management. Plaintiff did not receive information or financial statements about the corporation on a regular basis and did not request any until some time in 1982.

In 1979, Katz, Scher, Henner, and plaintiff agreed upon the com-

pensation to be paid by Miller-Jesser to Katz and Scher for their managerial services. This compensation consisted of annual salaries supplemented by payments to each of them of 20% of the gross commissions upon retail business cleared by Miller-Jesser for their customers, interest upon any balances held in their trading accounts, and 20% of the profits generated by Miller-Jesser. In addition, Katz was to receive rental payments equal to 6% of the value of his membership seat on the International Monetary Market, and plaintiff and Henner were entitled to process personal and business expenses through Miller-Jesser.

In the spring of 1982, plaintiff learned that a British firm had proposed to purchase the capital stock of Miller-Jesser and KSC for a total of $4,500,000. Under the terms of this proposal, the capital stock of Miller-Jesser was valued at approximately $3 million. Yet, this transaction was never consummated, and in December 1982, plaintiff learned that GNP Commodities, Inc. (GNP), had proposed to purchase the capital stock of Miller-Jesser. At the end of 1981, Miller-Jesser posted a profit of $60,560. At the end of 1982, however, Miller-Jesser posted a loss of $62,581. In addition, Miller-Jesser was defending lawsuits filed by some of its customers who had invested in Canadian Treasury bonds and bills.

In April 1983, by unanimous consent of the shareholders of Harvest Commodities and Miller-Jesser, these two corporations merged. All of the shares of the capital stock of Harvest Commodities were exchanged for shares of Miller-Jesser, and the resulting entity retained the name of Miller-Jesser, Inc. Shortly thereafter, certain of the assets and liabilities of Miller-Jesser were sold to GNP in an exchange for the assumption by GNP of certain limited liabilities of Miller-Jesser and a cash payment of $100,000. Miller-Jesser then ceased operating as a brokerage firm.

At various times during the operation of Miller-Jesser, Katz, Scher, Henner, and Ernest Katz extended loans to the corporation. These loans were subordinated in that Miller-Jesser's obligations to third-party creditors were to be satisfied before the loans were to be repaid. The loans were, however, superior to all equity interests, and defendants assert that approximately $650,000 remains due and owing from the corporation for these loans. Plaintiff did not make any loans to Miller-Jesser, and his entire financial contribution was limited to his initial investment of $10,000 in Harvest Commodities.

In August 1983, plaintiff brought this action in chancery against Miller-Jesser, Katz, Scher, and KSC, seeking an accounting, compensatory damages, and punitive damages. Upon motion of the defend-

ants, the trial court dismissed the complaint and granted plaintiff leave to file an amended complaint. In January 1984, plaintiff filed an amended complaint. Katz and Scher filed an answer which denied the material allegations of this complaint and asserted several affirmative defenses, and KSC filed a motion to dismiss the amended complaint. On June 22, 1984, the trial court entered an order dismissing the amended complaint against KSC only and granted plaintiff 28 days to file another amended complaint. Yet, plaintiff failed to file another amended complaint against KSC.

In September 1984, Katz and Scher filed a motion for summary judgment on count I of the amended complaint. This motion was supported by the transcript of plaintiff's deposition, the affidavits of Katz, Scher, Henner, Ernest Katz, and of two former employees of Miller-Jesser and of KSC who had been responsible for allocating the expenses for each corporation. The record does not disclose whether plaintiff ever responded to this motion or whether the trial court ever disposed of it.

On January 16, 1985, Miller-Jesser filed a counterclaim against plaintiff alleging that the compensation and benefits paid to him by Miller-Jesser exceeded the amount to which he was entitled by $81,000. Plaintiff denied the material allegations in the counterclaim and asserted that it had been filed in retaliation against him for proceeding with the suit for an accounting.

On June 17, 1985, plaintiff filed a second amended complaint against Miller-Jesser, Katz, and Scher, and adding Henner as a defendant. The second amended complaint did not include a count against KSC or seek any recovery from KSC. On June 26, 1985, Katz and Scher filed a motion to dismiss the second amended complaint. This motion to dismiss was supported by the affidavits of Katz, Scher, Henner, and Ernest Katz. In their affidavits, defendants asserted, *inter alia*, that Katz and Scher were entitled to receive annual salaries of $36,000 each, totaling $72,000, in addition to the other items of compensation. Henner filed a motion to strike count IV of the second amended complaint on the basis that it was factually insufficient.

Plaintiff filed a response to the defendants' motion to dismiss the second amended complaint, supported by his affidavit. In his affidavit, plaintiff asserted, *inter alia*, that Katz and Scher were entitled to receive annual salaries of $18,000 each, totaling $36,000, in addition to the other items of compensation. Katz and Scher filed a reply, and on February 5, 1986, the trial court denied their motion to dismiss the second amended complaint. Yet, the court granted Henner's

motion to strike count IV and granted plaintiff leave to file another amended complaint against Henner.

On March 10, 1986, plaintiff filed a third amended complaint against Miller-Jesser, Katz, Scher, and Henner. Counts I and II of that complaint were directed against Katz and Scher, and counts III and IV were directed against Henner. Counts I and III asserted shareholders' derivative claims, and counts II and IV asserted individual claims. Katz and Scher filed an answer to count I and a motion for judgment on the pleadings as to count II. They also filed a motion for partial summary judgment as to certain subparagraphs of count I of the third amended complaint. Henner filed a motion to dismiss counts III and IV of the third amended complaint. Plaintiff subsequently filed his responses to the motions filed by defendants.

On June 26, 1986, the trial court entered an order which (1) granted Henner's motion to dismiss counts III and IV due to a lack of ultimate facts to prove direct injury to plaintiff, and because there was no stated basis for compensatory or punitive damages; (2) granted the motion of Katz and Scher for partial summary judgment as to certain subparagraphs of count I; and (3) denied the motion of Katz and Scher for judgment on the pleadings as to count II.

Upon motions for reconsideration by both plaintiff and defendants, the trial court entered an order on August 8, 1986, which (1) vacated the dismissal of count III against Henner, and (2) dismissed count II against Katz and Scher. In response to a motion to modify by Henner, the trial court entered an order on September 25, 1986, which provided that certain subparagraphs were stricken from count III and that the plaintiff's punitive damages claim against Henner was stricken. On November 25, 1986, the court entered another order which superseded and replaced the order of September 25, 1986, and which provided only that the subparagraphs in count III were stricken.

On June 4, 1987, Henner filed a motion for summary judgment as to count III of the third amended complaint, contending that (1) plaintiff was precluded from maintaining a shareholders' derivative action on behalf of Miller-Jesser because his action was against the wishes of all of the other shareholders, and (2) plaintiff was precluded from maintaining a shareholders' derivative action on behalf of Miller-Jesser unless he could prove damages in excess of $650,000, the amount owed Henner and KSC by Miller-Jesser for loans made to the corporation. Henner's motion was supported by the affidavits of Katz, Scher, Henner, and Ernest Katz; excerpts from the transcripts of the depositions of plaintiff, Henner, and Mary Finch, an ac-

countant for Peat, Marwick & Main Company; and plaintiff's responses to interrogatories propounded by Henner.

On August 4, 1988, Katz and Scher joined in Henner's motion for summary judgment, incorporating Henner's arguments and seeking summary judgment as to count I of the third amended complaint. Despite several continuances in order to prepare a response, plaintiff failed to respond to the motions for summary judgment. Instead, he sent a letter to the trial judge in which he directed the court's attention to several documents on file with the court, including certain pleadings, motions and responses thereto, deposition transcripts, and orders previously entered by the court.

On October 21, 1988, the trial court granted Katz and Scher summary judgment as to count I, stating that plaintiff was precluded from maintaining a shareholders' derivative action as a sole complaining shareholder. The court also granted Henner summary judgment as to count III, stating that there were no genuine issues of material fact. Due to the pendency of the counterclaim by Miller-Jesser against plaintiff, the court's order included language pursuant to Supreme Court Rule 304(a) (107 Ill. 2d 304(a)), indicating that the order was final with no just reason to delay its enforcement or appeal.

On November 21, 1988, plaintiff filed a notice of appeal in this cause. The notice of appeal stated that plaintiff sought review of all of the orders entered in the trial court, including, without limitation, the following orders:

(1) the order entered on October 21, 1988, granting defendants' motions for summary judgment as to counts I and III of the third amended complaint;

(2) the order entered on June 26, 1986, as amended by orders dated August 9, 1986, and September 25, 1986, granting defendants' motion for judgment on the pleadings with respect to count II of the third amended complaint and dismissing count IV of the third amended complaint; and

(3) the order dismissing Katz and Scher as party defendants to this action. Plaintiff requested that those orders be vacated and that the cause be remanded to the trial court for further proceedings.

Defendants moved to strike certain portions of the notice of appeal, contending that (1) although the notice purported to appeal from an order dated August 9, 1986, no order had been entered in this cause on that date; (2) the September 25, 1986, order purportedly appealed from was specifically superseded in its entirety by an order entered on November 25, 1986, and (3) because the only order entered which dismissed Katz and Scher as party defendants to this

action was the October 21, 1988, order granting their motion for summary judgment, paragraph three of the notice of appeal is redundant and should be stricken.

■■■ We initially address defendants' motion to strike certain portions of the notice of appeal. Illinois Supreme Court Rule 303(c) provides that the notice of appeal shall specify the judgment or part thereof appealed from and the relief sought from the reviewing court. (107 Ill. 2d R. 303(c).) Although there appear to be minor inaccuracies in the instant notice of appeal, it is not "fatally defective" as defendants assert. A notice of appeal is to be liberally construed and need only inform the prevailing party in the trial court that the unsuccessful litigant seeks a review by a higher court. (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 433, 394 N.E.2d 380, 382.) Where the deficiency in the notice is one of form, rather than one of substance, and the appellee is not prejudiced, the absence of strict technical compliance with the form of the notice is not fatal. (*Burtell*, 76 Ill. 2d at 434, 394 N.E.2d at 383.) A notice of appeal will be deemed sufficient where it fairly and adequately sets out the judgment complained of and the relief sought, advising the successful party of the nature of the appeal. *Burtell*, 76 Ill. 2d at 433-34, 394 N.E.2d at 382-83.

Plaintiff's notice of appeal stated that he sought review of all of the orders entered in the trial court, including, without limitation, those entered on October 21, 1988; June 26, 1986; August 9, 1986; and September 25, 1986, as well as the order dismissing Katz and Scher as defendants.

■■ Upon examination of paragraph one of the notice of appeal, it is evident that plaintiff mistakenly referred to the order actually entered on August 8, 1986, as having been entered on August 9, 1986. There was no order entered in this cause on August 9, 1986, and the record reveals that the trial court and the parties had on occasion referred to the August 8 order as having been entered on August 9, 1986. Thus, defendants here could not have been misled or confused by the reference to an order entered on August 9, 1986, in paragraph one of the notice of appeal. See *Burtell*, 76 Ill. 2d at 436, 394 N.E.2d at 384; *In re Estate of Malloy* (1981), 96 Ill. App. 3d 1020, 1024, 422 N.E.2d 76, 80.

Even though the August 8, 1986, order was not specified in the notice of appeal, it was reviewable as a step in the procedural progression arising from the judgment specified in the notice of appeal. (*Burtell*, 76 Ill. 2d at 435, 394 N.E.2d at 383.) This analysis also applies to the November 25, 1986, order which superseded and replaced

158

the order of September 25, 1986, and was referred to in paragraph two of the notice of appeal. Although it was not specifically mentioned in the notice of appeal, the November 25, 1986, order was reviewable as a step in the procedural progression arising from the judgment specified in the notice of appeal. (*Burtell*, 76 Ill. 2d at 435, 394 N.E.2d at 383.) The first two paragraphs in the notice of appeal fairly and adequately informed defendants that plaintiff sought review by the appellate court of the relevant orders. The defendants could not have been misled or confused by these paragraphs, and the motion to strike them is denied.

■ Paragraph three of the notice of appeal sought review of an order dismissing Katz and Scher as party defendants to this action. Defendants assert in their motion to strike that the only order entered which dismissed Katz and Scher was the order of October 21, 1988. Defendants claim that because review of this order was sought in paragraph one of the notice of appeal, paragraph three is redundant and should be stricken. These assertions reflect that defendants interpreted paragraph three as referring to the dismissal of the individual defendants Marshall Katz and Fred Scher by virtue of the summary judgment granted in their favor on the third amended complaint.

Plaintiff, however, asserts that paragraph three refers to the order of June 22, 1984, which dismissed the first amended complaint against the corporate defendant KSC. The fact that defendants interpreted paragraph three as referring to an entirely different order, entered more than four years later and dismissing an entirely different party, indicates that defendants were misled or confused by this paragraph failed to fairly and adequately set out the judgment complained of and the relief sought, paragraph three of the notice of appeal is stricken. *Burtell*, 76 Ill. 2d at 433-34, 394 N.E.2d at 383.

Moreover, even if defendants had not been misled or confused by paragraph three, the order of June 22, 1984, is not reviewable because it did not terminate the litigation between the parties. That order granted KSC's motion to dismiss the amended complaint for failure to state a cause of action, but specifically granted plaintiff 28 days to file another amended complaint. Plaintiff's second amended complaint was filed in June 1985, almost one year after KSC had been dismissed, and did not include any claims against KSC. Plaintiff's third amended complaint also did not include any counts against KSC, and plaintiff never sought to resurrect his claims against KSC or to vacate the June 22, 1984, dismissal order.

■ An order dismissing counts of a complaint, but granting the

plaintiff leave to amend, does not terminate the litigation between the parties and is not a final order. (*Johnson v. Northwestern Memorial Hospital* (1979), 74 Ill. App. 3d 695, 697-98, 393 N.E.2d 712, 713-14.) In addition, plaintiff waived his right to object to the dismissal of KSC by filing subsequent amended pleadings without including any counts against KSC. (*Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, 153-55, 449 N.E.2d 125, 126-27; *Harvey v. Brewer* (1987), 166 Ill. App. 3d 253, 256, 519 N.E.2d 939, 941.) Because plaintiff failed to reallege any claims against KSC in subsequent pleadings, he has waived any objection to the dismissal of the amended complaint against KSC on June 22, 1984, and the issue cannot be raised before this court. Accordingly, paragraph three of the notice of appeal is stricken.

We next consider whether the trial court erred in granting defendants summary judgment on counts I and III of the third amended complaint which asserted shareholders' derivative claims against them.

■■ ■ Summary judgment is proper only where the pleadings, depositions, admissions, and affidavits demonstrate that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005.) Summary judgment is a drastic remedy to be granted only where the movant's right to it is clear and free from doubt. (*Sutton v. Washington Rubber Parts & Supply Co.* (1988), 176 Ill. App. 3d 85, 88, 530 N.E.2d 1055, 1057.) Thus, if the facts will allow more than one conclusion or inference, summary judgment should be denied. (*Sutton*, 176 Ill. App. 3d at 88, 530 N.E.2d at 1057.) Although the plaintiff must present evidence which demonstrates the existence of a triable issue of fact, he need not prove his entire case at the summary judgment stage. *Kramer v. Weedhopper of Utah, Inc.* (1986), 141 Ill. App. 3d 217, 221, 490 N.E.2d 104, 107.

In the instant case, the trial court granted Katz and Scher summary judgment on count I, finding that plaintiff could not maintain a shareholders' derivative claim because he was the sole complaining shareholder.

■■ ■ The derivative suit is a device to protect shareholders against abuses by the corporation, its officers and directors, and is a vehicle to insure corporate accountability. (*Cohen v. Beneficial Industrial Loan Corp.* (1949), 337 U.S. 541, 548, 93 L. Ed. 1528, 1537, 69 S. Ct. 1221, 1226; *Brown v. Tenney* (1988), 125 Ill. 2d 348, 355, 532 N.E.2d 230, 232.) The action is typically brought by a minority shareholder because a majority or controlling shareholder can usually per-

suade the corporation to sue in its own name. (*Tenney*, 125 Ill. 2d at 355, 532 N.E.2d at 232-33.) The fundamental basis of a shareholders' derivative action is to enforce a corporate right which the corporation either refuses to assert, or by reason of circumstances is unable to assert, and in such a situation, a single shareholder may pursue a derivative action. *Karris v. Water Tower Trust & Savings Bank* (1979), 72 Ill. App. 3d 339, 389 N.E.2d 1359; *Duncan v. National Tea Co.* (1957), 14 Ill. App. 2d 280, 144 N.E.2d 771; *Halsted Video, Inc. v. Guttillo* (N.D. Ill. 1987), 115 F.R.D. 177; *Ohio-Sealy Mattress Manufacturing Co. v. Kaplan* (N.D. Ill. 1980), 90 F.R.D. 21; *Shulman v. Ritzenberg* (D.C. 1969), 47 F.R.D. 202.

Precluding a single shareholder from pursuing a derivative claim merely because other shareholders do not seek to enforce the same rights would frustrate the fundamental purpose of a derivative action, which is to remedy a wrong to the corporation in cases where the corporation itself, because it is controlled by the alleged wrong-doers or for some other reason, refuses to take appropriate action for its own protection. (*Shulman*, 47 F.R.D. 202.) Consequently, the trial court's ruling in favor of Katz and Scher on count I insofar as it is based upon the fact that plaintiff was the sole complaining share-holder was erroneous.

In addition, the record reveals that there remains a genuine issue of material fact as to count I. In his third amended complaint, plaintiff alleged, *inter alia*, that Katz and Scher were entitled to receive annual salaries of $18,000 each, totaling $36,000. This factual allegation was also asserted in plaintiff's affidavit which was filed in response to defendants' motion to dismiss the second amended complaint. Defendants' motion for summary judgment was supported by their affidavits which alleged that Katz and Scher were entitled to receive annual salaries of $36,000 each, totaling $72,000. Consequently, the facts asserted in defendants' affidavits were contradicted by the statements made in plaintiff's affidavit and raised an issue of fact as to the amount of the annual salaries to which Katz and Scher were entitled. See *County of Lake v. Semmerling* (1990), 195 Ill. App. 3d 93, 100, 551 N.E.2d 1110, 1115.

Although plaintiff did not file a formal response and counteraffidavit opposing defendants' motion for summary judgment, his previously filed affidavit complied with the requirements of Supreme Court Rule 191 (107 Ill. 2d R. 191), and the trial court was obligated to consider the entire record in ruling on the motion for summary judgment. *Kokoyachuk v. Aeroquip Corp.* (1988), 172 Ill. App. 3d 432, 436; 526 N.E.2d 607, 609; *Lombard v. Elmore* (1985),

134 Ill. App. 3d 898, 902, 480 N.E.2d 1329, 1332.

■■ This court does not condone a litigant's refusal to respond to a motion for summary judgment. We must, however, reverse such a judgment where the existence of a genuine issue of material fact is established by the record. (*Amin v. Knape & Vogt Co.* (1986), 148 Ill. App. 3d 1075, 1077-78, 500 N.E.2d 454, 455-56.) Review of the instant record reveals that there was a genuine issue of material fact as to the amount of the annual salaries to which Katz and Scher were entitled, and summary judgment was improper. Accordingly, that judgment is reversed, and the cause is remanded for a determination of this limited question of fact. If the plaintiff is able to prove his claim regarding the salaries of Katz and Scher, then any amount owed by the corporation to defendants would be offset by the amount of discrepancy in the salaries paid.

■■ Defendants argue extensively that plaintiff's shareholder derivative claims must fail unless he establishes damages in excess of $650,000. This claim is based upon the assertion that plaintiff cannot show any harm to Miller-Jesser unless he is able to prove that the allegedly improper payments exceeded the $650,000 remaining due on the loans by defendants to the corporation. We find this argument unpersuasive, and we note that defendants have provided no citation to any authority in support of this claim. Our review of the law in this area compels us to conclude that an individual shareholder is permitted to bring a derivative action to challenge wrongful conduct by corporate officers and directors even where the corporation is indebted to those parties. If the individual shareholder is successful and obtains a judgment in favor of the corporation, the corporation would be entitled to apply the judgment as a setoff against the amounts owed to the officers and directors even though no money is actually recovered by the corporation.

We next consider plaintiff's contention that the trial court erred in granting summary judgment in favor of Henner on count III. The court based its decision on the specific finding that there remained no genuine issue of material fact as to the allegations contained in count III. In his third amended complaint, plaintiff alleged that Henner had received payments from Miller-Jesser which were in excess of the amounts to which he was entitled and that Henner participated in the misallocation of expenses between Miller-Jesser and KSC.

Henner's motion for summary judgment asserted that all of the payments to him were proper and that there was no evidence of misallocation of the expenses between Miller-Jesser and KSC. The mo-

tion was supported by excerpts from the deposition transcripts of plaintiff, Mary Finch, accountant for Peat, Marwick & Main Company, and Henner; the affidavits of Henner, Katz, Scher, and Ernest Katz; and plaintiff's responses to interrogatories propounded by Henner. These documents contained factual allegations supporting the assertions made in Henner's motion for summary judgment.

As noted above, plaintiff failed to file a formal response or counteraffidavit in opposition to the motion for summary judgment, but instead sent the trial judge a letter directing the court's attention to various pleadings and documents in the record. None of these documents, including plaintiff's affidavit, contained assertions which contradicted the factual allegations presented by Henner in support of his motion. Consequently, the facts contained in Henner's affidavit were admitted by plaintiff for purposes of the motion for summary judgment. *Smith v. South Shore Hospital* (1989), 187 Ill. App. 3d 847, 543 N.E.2d 868.

In claiming that the court erred in granting summary judgment in favor of Henner, plaintiff has argued that the deposition testimony of Mary Finch did not support Henner's position that all payments to him were proper and that there was no evidence of misallocation of the expenses between Miller-Jesser and KSC. Plaintiff asserts that Finch's testimony indicated that she was an accountant retained by defendants and that she had assumed that the disbursements shown on the books of Miller-Jesser were proper and were justified. Plaintiff contends that Finch's report was merely an extension of the testimony of Katz and did not resolve any of the disputed issues concerning the parties' right to receive certain payments.

In an accounting action, the burden of proof is on the party seeking the remedy, and that party must establish by a preponderance of the evidence that he has a right to the accounting. (*Ferrell v. Plasti-Drum Corp.* (1987), 159 Ill. App. 3d 936, 512 N.E.2d 1325.) Although the plaintiff need not present his entire case at the summary judgment stage, he is required to present sufficient evidence to demonstrate the existence of a triable issue of fact (*Kramer*, 141 Ill. App. 3d at 221, 490 N.E.2d at 107), and he cannot rely on his pleadings to avoid summary judgment in the face of deposition testimony or affidavits that contradict those pleadings (*Harris v. Bethlehem Steel Corp.* (1984), 124 Ill. App. 3d 449, 453, 464 N.E.2d 634, 637).

In the instant case, plaintiff failed to file a response or counteraffidavit in opposition to Henner's motion for summary judgment, and he presented no evidence at all which would tend to dis-

credit or controvert the testimony of Mary Finch. As previously noted, the pleadings and documents in the record before the court did not contain sufficient factual allegations to raise a genuine issue of material fact as to the claims made in count III. Consequently, the trial court's entry of summary judgment in favor of Henner was proper and is affirmed.

Defendants have argued that summary judgment in their favor on counts I and III was proper because plaintiff failed to name Harvest Commodities as a defendant. This argument is without merit. The record reveals that at the time plaintiff filed his complaint, Harvest Commodities had already been merged into Miller-Jesser, and the surviving corporate entity retained the name of Miller-Jesser, Inc. Consequently, it was not necessary to name Harvest Commodities separately because that corporate interest became a defendant, albeit under a different designation or structure, when Miller-Jesser was named as a defendant.

We next address plaintiff's claim that the trial court erred in dismissing counts II and IV of the third amended complaint which asserted individual claims against defendants. In those counts, plaintiff alleged that the defendant's breach of their fiduciary duties to him resulted in a devaluation of his stock in Miller-Jesser and in a loss of anticipated profits from the enhanced value of his stock in Miller-Jesser. These claims are clearly common to all shareholders of the corporation and do not assert a right which is held personally by the plaintiff. (*Poliquin v. Sapp* (1979), 72 Ill. App. 3d 477, 480, 390 N.E.2d 974, 977, *In re Knight* (1965), 60 Ill. App. 2d 457, 460-61, 208 N.E.2d 679, 681; *Twohy v. First National Bank* (7th Cir. 1985), 758 F.2d 1185, 1194.) Consequently, the trial court's dismissal of the individual claims asserted in counts II and IV was proper and is affirmed.

Finally, we consider the propriety of the trial court's dismissal of plaintiff's claims for punitive damages. Because of their penal nature, punitive damages are not favored, and courts must be cautious in seeing that they are not improperly or unwisely awarded. (*In re Estate of Wernick* (1989), 127 Ill. 2d 61, 83, 535 N.E.2d 876, 886; *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 188, 384 N.E.2d 353, 360.) Punitive damages may be awarded in cases where the wrongful act complained of is characterized by wantonness, malice, oppression or other circumstances of aggravation (*Wernick*, 127 Ill. 2d at 83-84, 535 N.E.2d at 886; *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 87, 174 N.E.2d 157, 165; *Glass v. Burkett* (1978), 64 Ill. App. 3d 676, 683, 381 N.E.2d 821, 826), and even where the defendant has

breached a fiduciary duty, punitive damages may not be warranted (*Wernick*, 127 Ill. 2d at 85, 535 N.E.2d at 887).

■■■ Our review of the instant record reveals that the only claim upon which plaintiff may recover is that for overpayment of annual salaries to Katz and Scher as alleged in count I. We cannot say that punitive damages are warranted in this case, which appears to merely involve a dispute over the salary agreement of the parties. Under these facts, we are compelled to conclude that the trial court's dismissal of plaintiff's claim for punitive damages was proper, and it is affirmed.

For the foregoing reasons, the defendants' motion to strike certain portions of the notice of appeal is granted as to paragraph three and is denied as to the remaining paragraphs; the entry of summary judgment in favor of Katz and Scher on count I is reversed, and the cause is remanded for further proceedings consistent with the views expressed herein; the entry of summary judgment in favor of Henner on count III is affirmed; the dismissal of counts II and IV is affirmed; and the dismissal of plaintiff's claims for punitive damages is affirmed.

Affirmed in part; reversed in part and remanded.

McNAMARA and EGAN, JJ., concur.