**Maria de Jesus BALTIERRA, M.D., Plaintiff,**

v.

**WEST VIRGINIA BOARD OF MEDICINE, et al., Defendants.**

No. CIV.A.02–00541 (RBW).

United States District Court, District of Columbia.

March 31, 2003.

---

4. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

Maria De Jesus Baltierra, San Diego, CA, Pro se.

Kenneth Joseph Barton, Jr., Steptoe & Johnson, Martinsburg, WV, Laurie J. Weinstein, U.S. Attorney's office, Washington, DC, Douglas A. Bahr, North Dakota Office of Attorney General, Bismarck, ND, for Defendants.

### MEMORANDUM AND ORDER

WALTON, District Judge.

Plaintiff, a physician, filed this case seeking injunctive and declaratory relief and damages for alleged violations of her federal and state rights in connection with the revocation of her medical license. The initial complaint named the West Virginia Board of Medicine, its individual members, the Secretary of Health and Human Services, and 50 Doe defendants. After the West Virginia defendants filed a motion to dismiss, plaintiff filed a First Amended Complaint, expanding on her allegations and adding as defendants the North Dakota State Board of Medical Examiners, its individual members and its Executive Secretary, Rolf P. Sletten, and a defendant whom she named as "Buffalo General Hospital Department of Family Medicine, SUNY–Buffalo" ("SUNY–Buffalo").[1] All

---

1. The motion filed on behalf of the New York defendant, which is identified by plaintiff as "Buffalo General Hospital Department of Family Medicine, SUNY–Buffalo," states that plaintiff "may intend to file a claim against the University at Buffalo School, the State University of New York, School of Medicine and BioMedical Sciences." Notice of Motion

defendants have filed dispositive motions, which plaintiff has opposed. This Memorandum and Order only resolves the motion of SUNY–Buffalo and certain other motions that have become moot. The remaining motions will be addressed by the Court in the near future.

*I. Background*

To summarize the complaint insofar as it relates to the motions that will be addressed at this time, plaintiff asserts the following: Plaintiff received the degree of doctor of medicine from the University of Minnesota in 1981. Complaint ("Compl.")[2] ¶¶ 7–10, 12–14, 24. She completed her post-graduate year in two parts, receiving three months credit from SUNY–Buffalo and ten months credit from the Transitional Medicine Program at the Marshall University School of Medicine in Huntington, West Virginia. Compl. ¶ 26. Plaintiff then was granted permanent licensure in West Virginia, effective May 2, 1992. Compl. ¶ 27. Focusing on emergency medicine, plaintiff then obtained licenses in Virginia, Kentucky, and Indiana. Compl. ¶¶ 29–40. She renewed her West Virginia license five times through 2002, without incident or disciplinary action. Compl. ¶ 28.

In 1998, plaintiff was recruited to work in North Dakota with the increasing Hispanic migrant worker population and obtained a temporary license in that state. Compl. ¶¶ 45–46. However, her application for a permanent license was denied, allegedly because she made a false statement in response to one question on the application. The answer related to her training at SUNY–Buffalo, was provided with the advice of counsel, and was based on her understanding that a resident/intern could not be "terminated" "in the traditional sense of the word." Compl. ¶¶ 55, 56. Plaintiff alleges that the claim that she made a false statement on the application is based on a letter that defendant Sletten, executive director of the North Dakota Board, "solicited directly" from Dr. Daniel Morelli, Vice–Chair of the Department of Medicine at SUNY–Buffalo. Compl. ¶¶ 57, 64, 65. Plaintiff alleges that Dr. Morelli's statements contained in his letter were false and were made with the knowledge that his letter would be used to deny plaintiff a North Dakota license and also would be used against her in disciplinary actions by other licensing boards. Compl. ¶¶ 66–72. As a result, plaintiff alleges that she was denied a permanent license in North Dakota. Compl. ¶ 82.

Plaintiff further alleges that the information from Morelli was passed on by Sletten to defendant Ronald Walton, executive director of the West Virginia Board, which then instituted a proceeding against plaintiff which resulted in revocation of her West Virginia license. Compl. ¶¶ 83–90, 130. Plaintiff challenges numerous aspects, both substantive and procedural, of the West Virginia proceedings. Compl. ¶¶ 91–130, 139, 140, 143–52.

Plaintiff alleges that defendant Secretary of Health and Human Services maintains a database of complaints against physicians that is intended to encourage licensing boards to "identify and discipline those who engage in unprofessional behavior, and to restrict the ability of incompetent physicians ... to move from State to State ...." Plaintiff asserts that the database is maintained pursuant to the Healthcare Quality and Improvement Act, 42

to Dismiss 02–541 ("SUNY–Buffalo Mot.") at 1, n. 1. In this opinion, the Court will refer to this defendant as "SUNY–Buffalo."

**2.** References to the complaint are to the First Amended Complaint.

U.S.C. §§ 11101 *et seq.*, Compl.¶¶ 143, 154. Although plaintiff asserts that she has had no history of misconduct in her practice of medicine, the North Dakota board submitted information about her to the defendant Secretary which was published on the database. This caused the West Virginia Board to initiate disciplinary proceedings against plaintiff, which resulted in her license revocation by that state, which in turn was reported to the Secretary. Compl.¶¶ 155, 156, 168–172. Plaintiff's efforts to have the Secretary correct the information provided by the North Dakota Board were unsatisfactory. Compl. ¶¶ 175–178, 181–82.

## II. The Motion of SUNY–Buffalo

Plaintiff's claim against defendant SUNY–Buffalo is summarized in her First Amended Complaint:

> whether the BGH, through the actions of its staff, agents, faculty and representatives, can escape scrutiny and liability for submitting a false report relating to BALTIERRA's medical training and separation from the SUNY–Buffalo Family Medicine Training Program, knowing full well the destructive impact such a report would have on her licensure status, her profession and her ability to earn a livelihood as a physician.

Compl. ¶ 16. Plaintiff alleges that Dr. Morelli knew her statement in the letter to Sletten that she had been terminated from training in February 1987 was false. Further, plaintiff claims, Morelli made the statement "with full knowledge that this letter would be used" to reject plaintiff's application for licensure in North Dakota and also in future disciplinary actions by other agencies. Compl. ¶¶ 57, 64–80.

Defendant SUNY–Buffalo has filed a motion to dismiss, encompassed in a No-tice of Motion to Dismiss and an Affidavit prepared by Barbra A. Kavanaugh, an Assistant Attorney General for the State of New York and attorney for the defendant. *See* Notice of Motion to Dismiss 02–541 ("SUNY–Buffalo Mot."). Although there is no memorandum in support of the motion, the motion is based on several sections of Rule 12(b) of the Federal Rules of Civil Procedure and alleges that the grounds for the motion are lack of jurisdiction over the subject matter, improper venue, insufficiency of service of process, and failure to state a claim on which relief can be granted. In addition, Kavanaugh's affidavit asserts that plaintiff "has failed to allege that Defendant [SUNY–Buffalo] has engaged in any activity or has had any contacts within the District of Columbia sufficient to enable this Court to exercise jurisdiction over the [d]efendant." *Id.*, Affidavit of Barbra A. Kavanaugh at ¶ 8. The motion filed on behalf of this New York defendant, while not as extensive as motions usually filed in this Court, is a concise statement of the grounds on which the defendant relies.

All defendants except the federal defendant have raised the issue whether their contacts with the District of Columbia are sufficient to enable this Court to exercise personal jurisdiction over them in this case. In an Order issued on August 15, 2002, plaintiff was given 30 days to respond to the motion filed by SUNY–Buffalo, and was informed that if she did not respond the Court might treat the motion as conceded and dismiss her claims against this defendant. Plaintiff submitted a very brief response to the New York defendant's motion as part of her opposition to the motions of the North Dakota State Board of Medical Examiners and the West Virginia Board of Medicine, which was filed September 23, 2002 ("Opposition")

(Docket Number 57), pp. 3–4, 8–9.[3] In support of her position that this Court can exercise jurisdiction, plaintiff relies on the District of Columbia long arm statute, 13 D.C.Code § 423 (2001), and alternatively on the general statute authorizing personal jurisdiction over foreign corporations that do business within the District of Columbia. *See* Opposition, pp. 8–9.[4]

■■■ In order for a court to exercise personal jurisdiction over a non-resident, the prospective defendant must have contacts with the jurisdiction sufficient to satisfy " 'traditional notions of fair play and substantial justice.' " *See Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). Without such minimum contacts, intentionally established, due process is violated when a defendant is required to respond to process in a foreign state. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The contacts must be such that the defendant reasonably could have anticipated being sued in the forum state in an action arising out of those contacts. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

■■■ When a defendant asserts that this Court lacks personal jurisdiction, the burden is on the plaintiff to prove that jurisdiction can be exercised. *See Reuber*

*v. United States,* 787 F.2d 599 (D.C.Cir. 1986). Plaintiff does not allege that SUNY–Buffalo or Dr. Morelli committed any act within the District of Columbia related to her claim. The only action plaintiff attributes to the New York defendant is the mailing of a letter from New York to North Dakota, which resulted in the denial of a license by the North Dakota Board, which then conveyed the denial to the West Virginia Board and to the Department of Health and Human Services. The only provision of the District of Columbia's long arm statute that might apply is Section 13–423(a)(4)(2001), which authorizes personal jurisdiction as to "a claim for relief arising from the person's ... causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia ...." There is no indication that SUNY–Buffalo had any regular contact with the District of Columbia. Insofar as this defendant might have anticipated that the letter would result in an action that would be conveyed to the HHS database, an entity does not subject itself to the jurisdiction of courts in the District of Columbia merely because of its contacts with the federal government. *See, e.g., Crane v. Carr,* 814 F.2d 758, 761–62 (D.C.Cir.1987); *World Wide Minerals, Ltd. v. Republic of Kazakhstahn,* 116

---

**3.** Plaintiff has also requested an extension of time to permit her to re-serve both the New York defendant and defendant Sletten of the North Dakota Board in accordance with Rule 4 of the Federal Rules of Civil Procedure. [Dkt. # 58]. Because plaintiff is proceeding *in forma pauperis,* service of process is made by the United States Marshal. Insufficiency of service of process can, therefore, be corrected if a defendant's motion to dismiss is otherwise denied. Plaintiff's motion for an

extension of time to effect service will, therefore, be denied.

**4.** Plaintiff argues that the North Dakota and West Virginia defendants have sufficient contacts with the District of Columbia because of the reports they filed with the Department of Health and Human Services. The motions of those defendants will be resolved later.

F.Supp.2d 98, 105–06 (D.D.C.2000); *Mallinckrodt Medical, Inc. v. Sonus Pharms., Inc.,* 989 F.Supp. 265, 270–272 (D.D.C. 1998); *Inv. Co. Inst. v. United States,* 550 F.Supp. 1213, 1216–17 (D.D.C.1982); *Envtl. Research Int'l, Inc. v. Lockwood Greene Engineers, Inc.,* 355 A.2d 808 (D.C. 1976) (*en banc*). Thus this Court cannot exercise jurisdiction over SUNY–Buffalo based on the District of Columbia's long arm statute, 13 D.C.Code § 423(a) (2001).

■ Plaintiff also attempts to establish that SUNY–Buffalo is "doing business" in the District of Columbia, in order to establish jurisdiction under the general jurisdiction statute, 13 D.C.Code § 334(a)(2001). She asserts, without providing any detail, that this defendant "conduct[s] business and/or perform[s] services in [its] regular course of business" and "maintain[s] close communications with the SECRETARY OF DHHS ... [and] readily suppl[ies] and request[s] information" from the North Dakota and West Virginia boards "as part of [its] normal business such that [it] would reasonably expect to be hailed into a foreign forum in controversies relating directly with their scope of duties." Opposition, p. 9. Such vague and unsupported statements are not sufficient to satisfy the constitutional requirements of due process. There is no evidence that this defendant has engaged in any activity at all in the District of Columbia, solicits business within the District of Columbia, or that it has any contacts within the District of Columbia, much less "continuous and systematic" business contacts within this jurisdiction. *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *cf. Gorman v. Ameritrade Holding Corp.,* 293 F.3d 506, 509 (D.C.Cir.2002). As noted, any contacts SUNY–Buffalo may have with agencies of the federal government do not subject it to personal jurisdiction in the District of Columbia.

Thus, this Court may not exercise jurisdiction over SUNY–Buffalo under either the long arm statute, 13 D.C.Code § 423(a)(2001), or the general statute authorizing jurisdiction over foreign corporations, 13 D.C.Code § 334(a)(2001). This defendant's motion to dismiss must therefore be granted.

### III. The West Virginia Defendants' First Motion to Dismiss or Transfer Venue

■ The West Virginia defendants filed a motion to dismiss the original complaint for lack of personal jurisdiction, insufficiency of service of process, and failure to state a claim on which relief can be granted, or alternatively, to dismiss for improper venue or to transfer the case to the United States District Court for the Southern District of West Virginia. This motion became moot when plaintiff filed her First Amended Complaint and therefore will be denied. A similar motion to dismiss or transfer the First Amended Complaint will be resolved separately.

### IV. The North Dakota Defendants' First Motion to Dismiss

■ The North Dakota defendants also moved to dismiss the First Amended Complaint for lack of personal jurisdiction and insufficiency of process after plaintiff mailed a copy of her complaint, without a summons, to the Solicitor General of the state. This motion likewise became moot when a proper summons was served by the United States Marshal. *See* Docket Number 41. These defendants have filed a second motion to dismiss, which will be resolved separately.

Accordingly, it is by the Court this 31st day of March, 2003

**ORDERED** that the first motion of the defendant North Dakota State Board of Medical Examiners to dismiss [Dkt. # 33–1] is **DENIED as moot.** It is

**FURTHER ORDERED** that the first motion of defendant West Virginia Board of Medicine to dismiss or change venue [Dkt.## 34–1, 34–2] is **DENIED as moot.** It is

**FURTHER ORDERED** that the motion of defendant Buffalo General Hospital to dismiss for lack of personal jurisdiction is **GRANTED;** the case is dismissed against defendant Buffalo General Hospital **without prejudice.** It is

**FURTHER ORDERED** that plaintiff's motion for an extension of time in which to re-serve certain defendants [Dkt. # 58–1] is **DENIED.**